IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 8, 2001 Session

# THE BANK/FIRST CITIZENS BANK v. CITIZENS AND ASSOCIATES, ALLIED MORTGAGE CAPITAL CORPORATION, FRIEDA GRAY, and HENRY GRAY, A/K/A JAMES GRAY, and FIRST TENNESSEE BANK

Direct Appeal from the Circuit Court for Bradley County
No. V-97-922     Hon. Russell Simmons, Circuit Judge

**FILED JULY 6, 2001**

**No. E2000-02545-COA-R3-CV**

Drawer of checks and Bank failed to exercise ordinary care in transactions under Tenn. Code Ann. §47-3-406. Drawer was assessed 80% of fault and Bank 20%. Drawer appeals. We affirm, as modified.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed, as Modified.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., joined. CHARLES D. SUSANO, JR., J., concurred in part, dissented in part, and filed an Opinion.

Charles W. Kite, Sevierville, Tennessee, for Appellant, Citizens and Associates.

George N. McCoin, Cleveland, Tennessee, for Appellee, The Bank/First Citizens Bank.

Thomas Crutchfield, Chattanooga, Tennessee, for Appellee, Allied Mortgage Capital Corporation.

Ginger F. Wilson, Cleveland, Tennessee, for Appellee, First Tennessee Bank.

**OPINION**

In this action, Citizens and Associates ("Citizens"), claim against The Bank/First Citizens Bank ("The Bank"), resulted in the Court finding Citizens 80% at fault for the loss, and The Bank 20% at fault. Citizens has appealed.

The basis of this action is that Frieda Gray, a branch manager for Allied Mortgage

Capital Corporation ("Allied"), received three checks from Citizens which totaled $50,000.00, and were made payable to Allied. Gray deposited these checks in her personal account, with an endorsement which reads "Allied Mortgage Company #259" or "Allied Mortgage Branch #259."

At trial, Bill Wilburn testified that he was President of Wilcore, Inc., that Wilcore is a partner in Citizens, and that the checks in question were written by him. He testified that he learned of Gray through business associates, and that she had opened an office for Allied in Cleveland, Tennessee. He testified that he and the other partner and principal Mathis Bush went to Cleveland and observed the operation, finding Allied's name on the door and with Gray as the Branch Manager. Based upon the explanations of Gray, they decided to purchase a franchise and Wilburn testified he wrote a check for $25,000.00 payable to Allied. Wilburn testified that when he wrote the check he called Gray for the mailing address. She volunteered to "overnight" it for him to Texas, because she had a package going out anyway. Someone on Gray's behalf picked up the check from his office. The first check was dated February 10, 1997, and subsequently another check in the amount of $16,666.68 dated March 6, 1997 and a check dated March 7, 1997 in the amount of $8,333.34 were issued, payable to Allied, and picked up in Knoxville by Gray. However, the checks were not forwarded to Allied's office, but deposited by Gray in her personal account in the names of herself and her husband. The Bank, after receiving the three checks, delivered them to the First Tennessee Bank for credit of the funds deposited into Gray's account, and First Tennessee paid over the money and debited the same from Citizens' account.

The issues on appeal are whether the Trial Court properly applied Tenn. Code Ann. §47-3-406, as it relates to the transactions between The Bank and Citizens, and whether First Tennessee Bank and Allied Mortgage Capital Corporation were properly dismissed as parties to the action. Also raised is whether the Trial Court properly allocated a fund paid into the Court by an intervening third party.

Our review on appeal is *de novo* with a presumption of correctness of the Trial Court's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *McCarty v. McCarty*, 863 S.W.2d 716, 719 (Tenn. Ct. App. 1992). No presumption of correctness attaches to the trial court's legal conclusions. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn. 1993).

The focal point of the first issue is Tenn. Code Ann. §47-3-406 which states:

(a) A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.

(b) Under subsection (a), if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure substantially

contributes to loss, the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss.

(c) Under subsection (a), the burden of proving failure to exercise ordinary care is on the person asserting the preclusion. Under subsection (b), the burden of proving failure to exercise ordinary care is on the person precluded.

The Trial Court found this section applicable to the facts in this case, and found that Citizens failed to exercise ordinary care by engaging in negligent or careless business practices, and that The Bank also failed to exercise ordinary care in accepting the checks and allowing them to be deposited in Gray's personal account, and that The Bank's failure substantially contributed to the loss suffered by Citizens. The Court then allocated the loss 80% to Citizens and 20% to The Bank. The evidence does not preponderate against this allocation. *Cross v. City of Memphis*, 20 S.W.3d 642 (Tenn. 2000).

Citizens insists that it was not negligence, and that even if it was, the negligence did not substantially contribute to the forgery, nor did The Bank take the items in good faith.

Tenn. Code Ann. §47-3-406 requires The Bank to prove that Citizens failed to exercise ordinary care. Ordinary care is defined in Tenn. Code Ann. §47-3-103 (a)(6) as "observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged."

The record reveals that Wilburn is a very experienced businessman, making investments and loans over the last 37 years, and also possessed a realtor's license. Likewise, the proof showed Bush was an experienced businessman with a realtor's license.

Given the experience of these individuals, we agree with the Trial Court that they failed to exercise ordinary care by delivering the checks to Gray without having any written documentation and without ever verifying her authority or the terms of the alleged agreement with Allied. In fact, she acted as their agent for purposes of delivering the check and not as an agent of Allied in processing the application. There is no evidence that Gray had any authority to accept and process applications for franchises. Wilburn admitted that had he made one phone call to Allied before writing the checks, this would have been avoided. Numerous cases have addressed a drawer's negligence or failure to exercise ordinary care such as entrusting a third party to deliver a check to the payee, and failing to adequately investigate the transaction, as is present here. *See Thompson Maple Products, Inc., v. Citizens National Bank*, 234 A.2d 32 (Pa. 1967); *Fidelity and Deposit Co. v. Chemical Bank New York Trust Co.*, 318 N.Y.S.2d 957 (N.Y.A.D. 1970); *Union Bank & Trust Co. v. Elmore County Nat'l Bank*, 592 So.2d 560 (Ala. 1991).[1] The evidence does not preponderate

---

[1]All cases cited in this Opinion and the dissenting opinion were decided before the current version of UCC-3-406 which was adopted in Tennessee in 1995. Thus comparative fault was not

against the Trial Court's finding that Citizens engaged in negligent and careless business practices.

Where a drawer negligently issues an instrument so as to contribute to its alteration or forgery, he must be judged by the comparative fault test set forth in Tenn. Code Ann. §47-3-406. *See* Official Comment 1. The loss suffered by Citizens was foreseeable, given Citizens lack of care in the handling of the transaction. *See* 6 William D. Hawkland & Lary Lawrence, Uniform Commercial Code Series §3-406:6 (1999), *citing* Keeton, Dobbs, Keeton & Owen, Prosser and Keeton on the Law of Torts at 169-173 (5th Ed. 1984).

Next, Citizens argues that even if found negligent, the negligence did not contribute to the forged endorsement, as required by Code section. "Substantially contributes" has been defined as less stringent than a direct and proximate cause test, and is found where the conduct is a contributing cause and a substantial factor in bringing it about. Tenn. Code Ann. §47-3-406, Official Comment 2.

Citizens was negligent in issuing the checks without verification and negligent in delivering them to Gray. The evidence further shows that this negligence substantially contributed to Gray's forgery, because the checks were put at her disposal. Thus Citizens's negligence contributed to her ability to forge the endorsement, and was a substantial factor in bringing it about. The evidence does not preponderate against the Trial Court's finding on this issue.

Citizens insists that The Bank did not pay the checks in good faith and therefore the Code section is inapplicable. Citizens seems to confuse good faith with ordinary care. The Trial Court found The Bank failed to exercise ordinary care in accepting the checks for deposit in Gray's personal account, and was properly assessed fault in this transaction pursuant to the comparative fault analysis in the Code section. The Trial Court's determination that The Bank failed to exercise ordinary care and this failure substantially contributed to the loss was not raised on appeal. Moreover, the failure to exercise ordinary care is not same as a lack of good faith.

"Good faith" is defined in Tenn. Code Ann. §47-1-201(19) as "honesty in fact in the conduct or transaction concerned." There has been no showing in this case that The Bank did not take the checks in good faith, or that there was any dishonesty or collusion involved in the transaction. Again, we conclude the Code section was properly applied to the facts of this case by

---

addressed.

Aside from the change in the Code, if Ms. Gray had fraudulently endorsed and deposited a check sent in by a customer to pay his mortgage at Allied per the usual custom, then the case would be factually similar to *Society*, and The Bank, under current law, would likely be charged 100% at fault. Rather, Citizens gave the checks to Gray without any checking on her authority, which is unlike a customer paying a monthly bill, but was instead a $50,000.00 investment in a new venture.

the Trial Judge.

Next, Citizens argues that First Tennessee should not have been dismissed as a party. The Trial Court found that First Tennessee had a depository agreement with Citizens which stated that notice of any irregularities or forgeries had to be given to First Tennessee within 120 days. It is undisputed that First Tennessee received no notice of any problems with checks until it was added as a party to this lawsuit in 1999, but Citizens argues that there was no proof regarding the time limit contained in the depository agreement, and that First Tennessee should not have been dismissed.

At the time First Tennessee was dismissed Citizens' lawyer was given an opportunity to respond, and he stated that he "somewhat" agreed with First Tennessee's position, and that First Tennessee was only brought into the lawsuit because they were the payor bank, and that otherwise the issue was a "nullity" and he had no response to the motion. The law is well-settled that a party who does not raise a proper objection at trial cannot raise one for the first time on appeal. *See Brownyard v. Brownyard*, 1999 WL 418352 (Tenn. Ct. App. June 22, 1999), perm. app. denied; *Also see* Tenn. R. App. P. 36.

Citizens filed a Motion and Notice of Partial Voluntary Dismissal of Appeal with regard to Allied, which was granted by this Court. The issue is no longer before the Court.

Finally, Citizens argues that the funds which were paid into court by the ContiMortgage Company which were ruled an excess of the monies due ContiMortgage in its foreclosure on property owned by the Grays, should have been awarded to Citizens rather than The Bank. The excess in the amount owed by the Grays recovered by ContiMortgage in the foreclosure was $9,081.81. The Trial Court awarded this fund to The Bank without giving any reason. Both The Bank and Citizens are now judgment creditors of the Grays. Accordingly, we believe equitable distribution should be 80% of this amount to The Bank and 20% of the amount paid to Citizens.

We affirm the Judgment of the Trial Court, as modified, and remand with cost of the appeal assessed 80% to Citizens and Associates and 20% to The Bank/First Citizens Bank.

_____
HERSCHEL PICKENS FRANKS, J.

-5-